Allen, J.
Certain principles touching the liability of the master to the servant, for injuries sustained by the latter in the course of his employment, have, by the decisions in this state and several of the sister states, as well as in England, become so well settled that they need only to be stated. They cannot be disturbed, neither can their authority be disregarded.
1. A master -is not responsible to those in his employ for injuries resulting from the negligence, carelessness or misconduct of a fellow servant engaged in the same general business. (Farwell v. The Boston & Worcester R. R. Corp., 4 Met., 49; Brown v. Maxwell, 6 Hill, 592; Coon v. Syracuse & Utica R. *565 R. Co., 1 Seld., 492; Sherman v. Rochester & Syracuse R. R. Co., 17 N. Y., 153; Russell v. Hudson R. R. Co., id., 134; Boldt v. The N. Y. Central R. R. Co., 18 id., 432; Hayes v. The Western R. R. Corp., 3 Cush., 270; Albro v. The Agawam Canal Co., 6 Cush., 75; Ray v. Boston and Worcester R. R. Corp., 9 id., 112; Gillshanon v. The Stony Brook R. R. Corp., 10 id., 228; Hutchinson v. The York, &c., Railway Co., 5 Exch. R., 343.)
2. The rule exempting the master is the same, although the grades of the servants or employers are different; and the person injured is inferior in rank and subject to the directions and general control of him by whose act the injury is caused. (Hayes v. The Western R. R. Corp., supra; Albro v. The Agawam Canal Co., supra; Wyman v. Jay, 5 Exch., 352.)
3. Neither is it necessary, in order to bring a case within the general rule of exeinption, that the servants, the one that suffers and the one that causes the injury, should be at the time engaged in the same operation or particular work. It is enough that they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties and services tending to accomplish the same general purposes, as in maintaining and operating a railroad, operating a factory, working a mine, or erecting a building. (Boldt v. New York Central R. R. Co.; Coon v. Syracuse and Utica R. R. Co.; Farwell v. Boston and Worcester R. R. Corp.; Albro v. The Agawam Canal Co.; Gillshanon v. Stony Brook R. R. Corp.; Wyman v. Jay; Hutchinson v. York and Newcastle Branch Railway Co., supra.) The question is, whether they are under the same general control. (Abraham v. Reynolds, 5 Hurl. & Norm., 142.)
4. The master is liable to his servant for any injury happening to him from the misconduct or personal negligence of the master; and this negligence may consist in the employment of unfit and incompetent servants and agents, or in the furnishing for the work to be done, or for the use of the servant, machinery or other implements and facilities improper and unsafe for the purposes to which they are to be *566 applied. (Priestly v. Fowler, 3 M. & W., 1; Hayden v. Smithville Manuf'g Co., 29 Conn., 548; Roberts v. Smith, 2 Hen. & Munf., 213; Williams v. Clough, 3 id., 257; Griffiths v. Godson, id., 648; Wyman v. Jay, supra; Owens v. Holland, Ellis, Blackb. & Ell., 102; Keegan v. W. R. R. Corp., 4 Seld., 175; Patterson v. Wallace, 28 L. & E., 48; Marshall v. Stewart, 33 id., 1.)
The employer does not undertake with each or any of his employees for the skill and competency of the other employees engaged in and about the same service, or for the sufficiency and safety of the materials and implements, furnished for the work, or for the convenience or comfort of the laborer, since neglect and want of due care in the selection and, employment of the agent or servant through whose want of skill or competency an injury is caused to a fellow servant, must be shown in order to charge the master; and if the injury arises from a defect or insufficiency in the machinery or implements furtoished ■ to the servant by the master, knowledge of the defect br insufficiency must be brought home to the master, or proof given that he was ignorant of the same, through his own negligence and want of proper care; in other words, it must be shown that he either knew or ought to have known the defects which caused the injury. Personal negligence is the gist 'of the action. (Hayden v. Smithville Manufacturing Co.; Roberts v. Smith; Wyman v. Jay; Keegan v. Western R. R. Corporation; Owens v. Holland, supra.) It is not enough that the foreman and general superintendent of the work is guilty of negligence, causing injury to the subordinates. (Wyman v. Jay, and other cases cited before.)
5. If the servant sustaining an injury through the unskillfulness or insufficiency in numbers or otherwise of his fellow laborers, or defects in the machinery or conveniences furnished by his employer, has the same knowledge, or means of knowledge of the unskillfulness and deficiencies referred to as his employer, he cannot sustain an action for the injury, but will be held to have voluntarily assumed all the risks of the employment, incurred, as they were, by the want of skill and incompetency of those employed with him, or the defective *567 machinery used in the work. (Priestly v. Fowler, 3 M. & W., 1; Hayden v. Smithville Manuf'g Co.; Griffiths v. Godwin; Williams v. Clough; Keegan v. Western R. R. Corporation; Paterson v. Wallace, supra; Skip v. Eastern Counties Railway Co., 24 L. and E., 396; S. C., 9 Exch., 223.)
6. It is not sufficient to charge the master for injuries to his servant that others of his employees were unskillful or incompetent, or the machinery, &c., unsafe and unfit for the purposes, unless the injury complained of resulted from these causes. If it was occasioned, notwithstanding such defects, by the negligence of a fellow servant, the master is not responsible. (Hayes v. The Western R. R. Corporation, 3 Cush., 270; Skip v. Eastern Counties Railway Co., supra.)
There is nothing in any of the cases to which our attention has been called, or which have come under my observation, inconsistent with these propositions, which I think are fairly deducible from all the cases. Keegan v. Western Railroad Corporation, in this court, decides nothing but the conceded doctrine that for personal negligence of the master, which was found by the referee, in the absence of any knowledge of such negligence as well as of any negligence on the part of the injured servant, the master would be liable. The case is a very bald case of gross, even culpable negligence, as stated and found by the referee, and scarcely needed the authority of the court to determine the liability of the defendant. Principles well established and as old as the common law fixed that. Paterson v. Wallace, supra, merely decides that, in that case and under the circumstances," there was a question of negligence proper to be submitted to a jury. If it is claimed that the decision goes further and to the extent of holding the employer liable for any injury which might be permitted by him or his foreman or principal superintendent, it cannot be sustained without overruling the subsequent decisions at Westminster Hall as well as in the courts of this country. Marshall v. Stewart turned upon the point which was mainly considered by Judge Selden in Russell v. Hudson River Railroad Company, supra, to wit, whether a servant was in the employ of his master *568 and within the operation of the rule regulating the liability of the master for injuries received by the servant eundo ei redeundo to and from the place of his labor, and the case is not authority beyond this, and to this extent it is supported by the decision of this court.
Applying these principles to the case in hand, the plaintiff should have been nonsuited. The verdict and judgment were retained .in the court below mainly upon the ground that the defendants, by the improper regulation of their trains, and the times and manner of their passing each other at the point of the collision, had directly and by personal, so to speak, and direct interference caused the collision and consequent injury to the plaintiff. But a little consideration will show the fallacy of this. It is true that by the time table the trains passing each way were to arrive at the point at the same instead of different time; the one going west to pass upon the switch or side track, while that going east retained the main track. If both were on time the former would, at the time indicated, leave the side track, and the main track would be free for the passage of the other train. The length of the side track, or its point of departure on the east from the main track, is not. given, and there is no ground of complaint, therefore, as to the improper construction of the'road with a view to the safe passage of trains of cars meeting as these were appointed to do. If the trains had been run in strict accordance with the time table they could and would have passed each other without stopping and in safety. But the complaint is that it was culpable to rely upon two trains going in different directions reaching a given point at the same instant of time. It will be seen that ample and safe provision was made for a failure in this respect, by an order making a part of the running regulations of the road, and obligatory upon all the employees of the corporation. It was only when they were on time that the trains were to pass without stopping. If the train from the east arrived first, it was to pass on to the side track and await the arrival of the train from the west. If the latter first arrived, it was'to stop'and wait a given time for the arrival of *569 the other. These directions accompanied the time table and were as well understood by the persons in charge of the trains as any other part of the time and running regulations. A compliance with these directions, required each train to ap proach this station cautiously and at a reduced rate*of speed, unless the person in charge could clearly and certainly see that all was clear for a passing without stopping. It required no skill as an engineer or conductor, or experience in running a railway train, to know this; and to disregard so obvious a duty and approach the station in the night at an unusual rate of speed was gross negligence and cannot be resolved into a general ignorance of the road and its peculiarities and way marks. The engineer was not and did not claim to be ignorant of this station or of his approach to it, but he knowingly and recklessly undertook to pass at a high rate of speed without assuring himself that the train was where it should have been, to permit him to do so; and the collision was the result of this wanton act, and not the result of his ignorance of the road or of this station. He says he saw the other train but thought it was stationary. It was culpable negligence to pass on at an undiminished speed before making sure of this. Again, the train going west was a little ahead of time, as is testified by the engineer of that train, so that if the train from the west had not only not been run at a reckless speed, but also had not been run ahead of its time, no collision would have taken place. The time regulations of the company were not, therefore, involved upon the trial, but the collision was solely, upon the undisputed evidence, attributable to the careless, if not wanton, disregard of the running regulations of the defendants and the ordinary rules of prudence which are to be regarded in such cases by the engineer in charge. It is not a case, therefore, to charge the common employer of the careless as well as the suffering servant for the injury. (Hayes v. Western R. R. Corporation, supra.)
But, again, the plaintiff, as appears by his own testimony, had been serving on this same train as brakeman, and under the same running regulations for several weeks, and was *570 familiar with the arrangements for the passing of the trains at Pekin, the point of collision. He knew the perils of the service, and consented to continue in it, and has no claims upon his employer, in respect to injuries resulting from these perils. He .knew, as well as the directors or the defendant could know, the dangers of a collision at Pekin, under the running regulations, which had been in force several weeks before the injury. He, therefore, voluntarily assumed the risks, and must bear the loss consequent upon them. (Priestly v. Newlan; Hayden v. Smithville Manf'g Co.; Griffiths v. Godson; Williams v. Clough; Skip v. Eastern Counties Railway Co., supra.)
The court below were of opinion that but for this supposed imprudent direction for running the trains, the action could not be sustained. The judgment cannot, upon any principle, be sustained upon this ground. *
Upon the other ground, the incompetency of the engineer, conceding all that can be claimed by the plaintiff, that he was incompetent, and the defendant, by reason of negligence in employing him, is liable to the other employees for the consequences of his want of skill, still, for the consequences of the collision, the defendant is not responsible; for the reason, as we have seen, that it was not the result of his ignorance or incompetence, but of his .rashness and reckless want of care. He had been an engineer in charge of railway trains for several years, and it is not disputed that he was in every way competent for the duties of his station. But the complaint is that he was put to do duty in the night timé, and on a road with which he was not familiar, only having such a knowledge of it as could be gained by running trains over it twelve times, and the last occurred the night before. But the collision did not occur by reason of any ignorance of'the road or its peculiarities at the point of collision, or that he was approaching Pekin, and was there to meet and pass another train, which should be on the side track; but because, knowing everything that was needful to the safe running of the train, and having skill in the management of an engine and trains of cars, he negligently and recklessly disregarded the running directions *571 of his employer, and the safety of his train, and passed over the road in advance of the regular time, and at an unusual speed.
But if this difficulty was not in the case, there is another insuperable objection to the plaintiff’s recovery. Without considering whether there is any evidence which should have been submitted to the jury, of the incompetency of the engineer in charge of the train to run it upon that occasion, of which I very much doubt, there is no evidence of the negligence of the defendant in employing him. It is not claimed, as before said, that he was not a competent, if not an accomplished, engineer. He is conceded to have been a fit and proper man to employ as an engineer, and that there was no blame imputable to the defendant or to Upton, the person in charge of the defendant’s locomotives, engineers and machine shop at Rochester, whose duty it was to employ engineers. The duty of Upton was well performed, in the general employment of the engineer; and assuming, for the purpose of this action, that for the proper performance of this delegated power in the selection and hiring of engineers, the defendant may be responsible to the other servants of the company—which is, at least, debatable—there was no neglect, neither, indeed, could there be, in the hiring of this engineer, because he was a skillful man in that service. But in running this particular train, to meet an emergency occasioned by sickness in the family of the regular engineer of the train, he was acting as the foreman or servant of the company, and in concert with every other person having any duty to perform in respect to it, and to accomplish a special purpose, to wit: the running of the train upon that occasion from Suspension Bridge to Rochester. Had he caused the trains to be run short-handed, it would have been an act of negligence on the part of one of the servants of the company, for the consequences of which the defendants would not have been liable to their other employers. All that Upton did upon that occasion, he did as the agent or servant of the defendant, and there is nothing to distinguish the case from any other in which an inferior or subordinate *572 servant is injured by the negligence of a superior agent of the same principal or employer. He was acting in the performance of a special duty, and the fact that he had the hiring of all the engineers for that division of the road, cannot increase the liability of the defendant for his negligent performance of a duty assigned to him, to superintend the running of a locomotive upon a special emergency. There was no negligence in the selection' of Upton for this purpose. The cases cited above show that for the negligence of a foreman or a superintendent, the master is no more liable than for the negligence of any other servant; and it can make no difference in principle that the negligence is in the selection of the materials, the implements or the agents for the performance of a given work instead of directing the time, mode or manner of doing the work.
The judgment must be reversed and a new trial granted, costs to abide event.
Gould, J.
It would seem that the general term of the Supreme Court arrived at a clearly correct conclusion, in holding the weight of evidence to be that Adams, the engineer, was competent; so that there was on the part of the Company and its superintendent, no negligence in employing him as an engineer, or in assigning to him the duty of taking charge of this particular train. That court might have gone still further and held that by the evidence he was plainly competent, but that he was proved to have been angry at what he considered an extra duty, and that in his passion he was careless and did not take proper care in approaching a station where he knew he was to meet a train, and where he was told to be ready to stop as that train might not be on time. Viewing this as the undoubted state of the evidence, not varied by the testimony of Adams, the question of his competency as well as that of the negligence of the Company in employing him was improperly left to the jury.
In the court below nothing prevented their coming to this conclusion, but considering the question of the proper making *573 up of the time table, as being connected with the question of the engineer’s competency. The two questions are entirely independent of each other. And though want of care as to the time table might furnish a cause of action against the defendant, it would have no bearing on the question of want of care in selecting an engineer.
Again, there can- be no doubt that the suffering of the plaintiff by the second breaking of his leg, and the condition of his leg and the permanency of the injury, after such second breaking, could form no part of the considerations "upon which the jury were to award damages. Yet proof on those points was admitted against the defendant’s objection and under an exception. The answer of the general term to this exception is very ingenious, and if consistent with the state of the case, possibly sound. Had the evidence been admitted for the purpose of discriminating between so much of the injury as was caused by the first breaking, and so much of it as was caused by the second, it would have been perhaps barely admissible, although it may well be doubted whether such discriminating process could, by any possibility, be anything but merely uncertain speculation. Still, the answer is, that on the offering of the evidence, no such ground for admitting was ever suggested, nor was any such discrimination hinted at in the charge to the jury." The evidence was admitted in the case generally, and the charge left it, with the other evidence in gross, to the jury.
. As much stress is laid upon the making up of the time-table, it may be well to suggest, that ordinarily, the time set down in the table opposite the name of a station, is the time for leaving that station; so that finding the same minute noted for two trains at the same station, does not mean, that they are to arrive at the station at the same instant, but that they are to leave it at the same instant, when, being on different tracks, there can be no danger of a collision. This, however, can be corrected in a new trial, which should be had.
The judgment should be reversed.
*574 Davies and Weight, Js., concurred; Denio, Ch. J., concurred, except as to the evidence in reference to the condition of the plaintiff’s leg after the second fracture, which he thought was' competent. Sutherland and Smith, Js., dissented; Selden, J., did not sit in the case.
Judgment reversed, and new trial ordered.